**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

*Counsel for Plaintiffs and the Proposed Class*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

NICOLE FLICK, for herself and as parent and natural guardian of M.C., a minor, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

POWERSCHOOL HOLDINGS, INC, and BAIN CAPITAL, L.P.

Defendants.

Case No.

**CLASS ACTION COMPLAINT**

1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW BUSINESS & PROFESSIONS CODE § 17200, *et seq*.;
2. DECEIT BY CONCEALMENT, CALIFORNIA CIVIL CODE §§ 1709, 1710;
3. CALIFORNIA CONSUMER PRIVACY ACT CIVIL CODE §1798.100
4. NEGLIGENCE
5. INVASION OF PRIVACY
6. UNJUST ENRICHMENT
7. BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
8. DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

**DEMAND FOR JURY TRIAL**

Plaintiffs Nicole Flick and M.C. (collectively "**Plaintiffs**"), individually and on behalf of all others similarly situated, bring this Action against PowerSchool Holdings, Inc. ("**PowerSchool**") and Bain Capital, L.P. ("**Bain**") (collectively "**Defendants**"). The Plaintiffs' allegations are based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys. The

Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for discovery.

## INTRODUCTION

1. PowerSchool is a cloud-based software solutions provider for K-12 schools and districts that collects and manages the data of over 60 million students and over 18,000 customers worldwide. As PowerSchool is "a leading provider of cloud-based software for K-12 education," the overwhelming majority of its 18,000 customers are K-12 schools or other educational institutions.[1] PowerSchool offers a full range of services to help school districts operate, including platforms for enrollment, communication, attendance, staff management, learning systems, analytics, and finance.

2. Bain Capital, L.P. "is one of the world's leading private multi-asset alternative investment firms," and acquired PowerSchool Holdings, Inc., on or about October 1, 2024.[2] Bain Capital played a key role in the events leading up to the data breach here. As an owner, they provided strategic oversight, approving major investments and making decisions related to cybersecurity, risk management, operations, and finances of PowerSchool. Bain also played a central role in the recovery and response to the Data Breach at issue herein, including the failure to provide a proper notice as discussed below, to the victims of the data breach.

3. Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard Plaintiffs' and other similar situated individuals' personal identifiable information ("**PII**"), including but not limited to students', their parents', and teachers' contact details such as names and addresses, Social Security numbers (SSNs), medical information, and grades. (collectively referred to as "**Private Information**").

4. This class action arises out of the Defendants' failure to secure their cloud storage systems, enabling third party criminals to access and misuse highly sensitive Private Information from PowerSchool's cloud storage and systems (the "**Data Breach**").

---

[1] *PowerSchool, Bain Capital Completes Acquisition of PowerSchool*, POWERSCHOOL https://www.powerschool.com/bain-capital/ (October 1, 2024).
[2] *Id.*



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

5. PowerSchool and, as of October 2024, jointly with Bain, provides software for their thousands of clients around the world, and as a result has access to, stores, and maintains huge datasets of Private Information of their clients' students and staff. For the purposes of this action, PowerSchool's (and now Bain Capital's) clients are schools and districts that contracted with PowerSchool to store confidential files of their customers and employees. PowerSchool's clients include, but are not limited to, San Diego Unified School District ("**SDUSD**") in California, Norwalk public schools in Connecticut, and New Albany Floyd County Schools in Indiana, among others.[3]

6. Defendants' clients – school districts - paid a fee to the Defendants for PowerSchool's cloud-based software and services. The fee was at least in part paid to maintain security features surrounding PowerSchool's data storage. As a result, Defendants were required to secure their platforms, on which they directed school districts to store sensitive information and files containing Private Information of millions of individuals - their students and teachers (the affected Plaintiffs and Class Members), and on which Defendants collected students and teachers sensitive files with confidential information and PII.

7. The Data Breach was a direct result of the Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect the Private Information exfiltrated. Defendants could have easily prevented the Data Breach by ensuring that industry standard cybersecurity practices were implemented and followed. Had the Defendants implemented and followed cybersecurity protocol such as limiting individuals' access to files to the minimum necessary, limiting the quantity of information that could be downloaded or exported from the system, regularly logged and limited file access, and otherwise followed applicable standards, this data breach likely would have been prevented.

8. Defendants knew that they carried an important responsibility to protect the data they collected, assuring their customers – school districts, students, and staff that they were "committed

---

[3] Lawrence Abrams, *PowerSchool hack exposes student, teacher data from K-12 districts,* BLEEPINGCOMPUTER (Jan 7, 2025), https://www.bleepingcomputer.com/news/security/powerschool-hack-exposes-student-teacher-data-from-k-12-districts/.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

to being a good custodian of student data, taking all reasonable and appropriate countermeasures to ensure data confidentiality, integrity, and availability."[4] Despite these assurances to the school districts, the Defendants failed to protect the very customer information they were entrusted to collect, compromising the personal information of an undisclosed number of their clients.

9. As a result of the Defendants' inadequate security and breach of their duties and obligations, the Private Information of Plaintiffs and Class Members was compromised through disclosure to an unauthorized criminal third party. The Plaintiffs and Class Members have suffered injuries as a direct and proximate result of the Defendants' conduct. These injuries include: (i) out-of-pocket expenses associated with preventing, detecting, and remediating identity theft, social engineering, and other unauthorized use of their Private Information; (ii) opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iii) the continued, long term, and certain increased risk that unauthorized persons will access and abuse Plaintiffs' and Class Members' Private Information; (iv) the continued and certain increased risk that the Private Information that remains in the Defendants' possession is subject to further unauthorized disclosure for so long as the Defendants fail to undertake proper measures to protect the Private Information; (v) invasion of privacy and increased risk of fraud and identity theft; (vi) theft of their Private Information and the resulting loss of privacy rights in that information; (vii) diminution in value and/or lost value of Private Information, a form of property that the Defendants obtained from the Plaintiffs, and Class Members. This action seeks to remedy these failings and their consequences. The Plaintiffs and Class Members have a continuing interest in ensuring that their Private Information is and remains safe, and they should be entitled to injunctive and other equitable relief.

10. Even the most fundamental Private Information, like names, email addresses, home addresses, or phone numbers, when paired with other uniquely personalized data like Social Security numbers, become especially valuable to cybercriminals to create seemingly legitimate, personalized phishing scams. This exfiltrated personal data, the full extent of which PowerSchool has failed to

---

4 *Cybersecurity, Data Privacy, & Infrastructure*, POWERSCHOOL, https://www.powerschool.com/security/ (last accessed Jan. 10, 2025).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

disclose to the public, allows hackers to gain a clear image of each individual and track their whereabouts, leading hackers to each victim's behavior and background. The combined exfiltrated data effectively provides criminals with a key to their personal lives, making it easy to match additional data, gaining access to their personal accounts and insight on their preferences. Hackers are now able to build a three-dimensional picture, and thereby exploit the Plaintiffs and Class Members.

11. The Defendants disregarded the rights of the Plaintiffs and Class Members by, inter alia, failing to take adequate and reasonable measures to ensure their data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Private Information; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to properly train their staff and employees on proper security measures.

12. In addition, the Defendants failed to properly monitor their computer network and systems that housed the Private Information. Had they properly monitored these electronic and cloud-based systems, they would have discovered the intrusion sooner or prevented it altogether.

13. PowerSchool and Bain received a financial benefit – a fee for their services which included storing and protecting their data cloud servers to ensure that Plaintiffs' and Class Members' Private Information would be protected. PowerSchool assumed a duty to the Plaintiffs and Class Members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard the Plaintiffs' and Class Members' Private Information against unauthorized access and disclosure. They were aware that the data files stored on their servers contain sensitive information of millions of individuals – the teachers and students of thousands of schools and other educational institutions with whom PowerSchool and Bain contracted. The Defendants' responsibility was to protect their cloud servers, and the sensitive files stored on their servers and which they collected, directly and indirectly, from Plaintiffs and the Class Members. At least a partial (if not full) payment for their services was attributed to protecting the files and sensitive information on their cloud platforms.

14. The Plaintiffs bring this lawsuit on behalf of themselves and all those similarly

situated to address the Defendants' inadequate safeguarding of Class Members' Private Information that they collected and maintained. To remedy these violations of law, the Plaintiffs and Class Members thus seek actual damages, statutory damages, restitution, and injunctive and declaratory relief (including significant improvements to the Defendants' data security protocols and employee training practices), reasonable attorneys' fees, costs, and expenses incurred in bringing this action, and all other remedies this Court deems just and proper.

## PARTIES

### I. PLAINTIFFS

15. **Plaintiff, Nicole Flick, as parent and natural guardian of M.C. a minor.** Plaintiff, Nicole Flick, is the mother and natural guardian of her son, M.C., a minor.

16. **Plaintiff M.C.** Plaintiff, M.C., is Plaintiff Flick's child and is a seven-year-old in second grade at PowerSchool's client San Diego Unified School District. ("SDUSD").

17. San Diego Unified School District is one of the school districts who entrusted PowerSchool with the security and protection of the cloud servers on which the Plaintiffs' sensitive information was stored.

18. Plaintiff Flick provided her and her son, M.C.s, Private Information to San Diego Unified School District, and as a result to the Defendants. In receiving and maintaining Plaintiffs' Private Information for business purposes, the Defendants expressly and impliedly promised, and undertook a duty, to act reasonably in their handling of Plaintiffs' Private Information. Defendants, however, did not take proper care of the Plaintiffs' Private Information, leading to their exposure to and exfiltration by cybercriminals as a direct result of the Defendants' inadequate cybersecurity measures.

19. On information and belief, at least some of the data provided to SDUSD and Defendants regarding M.C. is data that also relates to Plaintiff Flick directly. Thus, data directly applicable to Plaintiff Flick was also involved in the breach as well as that of her son M.C.

20. The Plaintiffs have a deep interest in ensuring that their Private Information, which remains in the Defendants' possession, is protected and safeguarded from future breaches. Plaintiffs seek public injunctive relief, which is necessary here not only to prevent the next data breach and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

to correct the misrepresentations (or alternatively ensure that the promised representations of security are accurate), but also to ensure their Private Information, as well as that of the public collected by Defendants is also archived or deleted to the extent it is not necessary to be kept in Defendants' possession.

21. Plaintiffs only allowed Defendants to maintain, store, and use their Private Information because they reasonably expected that the Defendants would use industry-standard security measures to protect their Private Information and prevent their access by unauthorized third parties. As a result of this expectation, the Plaintiffs entrusted their Private Information to the school district and Defendants, and this Private Information was within the possession and control of the Defendants at the time of the Data Breach. The Plaintiffs believed that their information would be secure in the hands of the Defendants and would not have provided their PII to the Defendants, or would have sought additional assurances and improved security measures, if they knew that the Defendants were not properly securing their PII.

22. As a result of the Data Breach, Plaintiffs have been further injured by the damage to, and loss in value, of their Private Information - a form of intangible property that the Plaintiffs entrusted to the Defendants, when Plaintiffs provided their information to their school. This information has inherent value that Plaintiffs were deprived of when their Private Information was negligently made accessible to and intentionally and maliciously exfiltrated by cybercriminals.

23. Given the nature of the information involved and the malicious and intentional means through which the information was stolen, the Data Breach has also caused Plaintiffs to suffer imminent harm arising from a substantially increased risk of additional fraud, identity theft, financial crimes, and misuse of their Private Information. This highly sensitive information, which includes their ***name, address, Social Security number, medical information, and grades***, is now in the hands of criminals as a direct and proximate result of the Defendants' misconduct.

24. As a result of the actual harm Plaintiffs have suffered due to the Data Breach and the imminent and substantial risk of future harm, the Data Breach has forced Plaintiff Flick to spend significant time and energy dealing with issues related to the Data Breach, including self-monitoring her accounts to ensure no fraudulent activity has occurred and changing identifying

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

information and passwords for her accounts, as well as monitoring for potential fraud on behalf of M.C. Much of the time and energy that the Plaintiffs expended, which has been lost forever and cannot be recaptured, was spent attempting to remedy issues caused by the Defendants' breach of their duties to the Plaintiffs and the Class.

25. The substantial risk of imminent harm and loss of privacy has also caused Plaintiff Flick to suffer stress, fear, emotional distress, and anxiety both for herself as well as for her minor child, M.C., who is seven years old but has already had sensitive personal information leaked to unknown third parties due to the Defendants' failure to properly secure this data.

### II. DEFENDANTS

26. **PowerSchool.** Defendant PowerSchool Holdings, Inc. is a Delaware corporation headquartered in California with its principal place of business located at 150 Parkshore Dr, Folsom, CA 95630. PowerSchool conducts business, providing cloud-based services to clients across the nation.

27. **Bain Capital.** Defendant Bain Capital, L.P., is a Massachusetts-based limited partnership. Bain Capital fully acquired PowerSchool on or around October 1, 2024, prior to the data breach.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332(d) because this is a class action where the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367. Furthermore, the affected victims of the data breach – the Class Members – reside nationwide.

29. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District: PowerSchool's principal place of business is located in this District from where its board of directors and/or officers direct its activities including to their actions and inactions leading to the data breach at issue; the Defendants gain revenue and profits from doing business in this District;

and Class Members were affected by the breach from the Defendants' actions and inactions directed from this District.

**FACTUAL ALLEGATIONS**

30. Defendant Bain owns PowerSchool, a cloud-based software company that provides student information systems (SIS) for K-12 schools worldwide. Through PowerSchool's software, Defendants collect, process, and use for their commercial benefit, the personal data of Plaintiffs' and the putative class – other minors, parents, and staff of school districts, through which Defendants obtained massive amounts of Private Information.

31. PowerSchool SIS is a comprehensive student information system (SIS) used to manage student records, grades, attendance, enrollment, and more.[5]

32. The information collected and stored by the Defendants includes, but is not limited to, ***names, addresses, Social Security numbers, medical information, and grades***.

33. Defendants hold themselves as trustworthy companies, which recognize and value their clients' (and customers') privacy and personal information and have repeatedly assured their clientele that their system – PowerSchool SIS – is "the Industry Leader for Protected, Private Data"[6] Defendants double down on their commitments, warranting that they are "dedicated to keeping customers; student, staff, and student data safe."[7]

34. Defendants actively solicit information from not just their clients, school districts, but also from teachers, students, and their parents, as part of their student information system.

35. Defendants tout their software as being "Secure, Flexible, & Compliant SIS," including that their platform allows "student and family access to grades, attendance, and progress . . . to improve accountability and communication."[8]

36. Defendants' software also provides a "Parent and Student Portal," "PowerSchool

---

[5] *Id.*
[6] *Cybersecurity, Data Privacy, & Infrastructure*, POWERSCHOOL, https://www.powerschool.com/security/ (last accessed Jan. 10, 2025).
[7] *Id.*
[8] *PowerSchool SIS*, POWERSCHOOL, https://www.powerschool.com/student-information-cloud/powerschool-sis/ (last accessed Jan. 16, 2025).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Enrollment & PowerSchool Enrollment Express," and "PowerSchool Ecollect Forms," which allow teachers, students, and their parents, to add and review information directly via the PowerSchool SIS. Thus, Defendants do not simply host data for the school districts, but actively solicit data from them, their students. and parents.[9]

**I. Bain Capital's Acquisition of PowerSchool Prior to the Data Breach**

37. Bain fully acquired PowerSchool on or about October 1, 2024. As an owner of PowerSchool, Bain is both directly and vicariously liable for their own and Defendant PowerSchool's unlawful actions. Bain's poor management and negligent oversight of PowerSchool make it responsible for the Data Breach and damages.

38. When purchasing PowerSchool, Bain Capital made clear that it would be actively involved in the management of PowerSchool. For example, in the press release touting the purchase, David Humphrey, a partner at Bain Capital, stated that Bain was "thrilled to support PowerSchool's mission and growth as it becomes a private company. This is a significant milestone that builds on PowerSchool's strong foundation and vast potential to deliver."[10]

39. PowerSchool also made clear that it would be working closely with Bain, with Hardeep Gulati, CEO of PowerSchool asserting that "[w]ith Bain Capital's support, PowerSchool will have access to additional resources and the flexibility to deliver even more growth and innovation."[11] Gulati also noted how Bain Capital would be actively involved in expanding PowerSchool's technical capacity, stating that "Together with Bain Capital, PowerSchool will continue to drive industry-leading innovation, particularly with PowerBuddy, our generative AI platform, and scale our global reach, helping more schools personalize education for every student journey."[12]

---

[9] *Id.*

[10] *Bain Capital Completes Acquisition of PowerSchool*, POWERSCHOOL https://www.powerschool.com/bain-capital/ (Last Accessed January 16, 2024).

[11] *PowerSchool to be acquired by Bain Capital in $5.6 Billion Transaction*, BAIN CAPITAL https://www.baincapital.com/news/powerschool-be-acquired-bain-capital-56-billion-transaction (Last Accessed January 16, 2025).

[12] *Bain Capital Completes Acquisition of PowerSchool*, POWERSCHOOL https://www.powerschool.com/bain-capital/ (Last Accessed January 16, 2024).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

40. On information and belief, the Data Breach occurred on or about December 22, 2024.[13] Thus, Bain had owned, controlled, and partnered closely with PowerSchool for months prior to the breach and had the power and ability to prevent the Data Breach from occurring when it fully acquired PowerSchool, and the power and ability to act when the Data Breach happened, and yet it failed to do so.

41. Since Bain's acquisition of PowerSchool, it took an active role in PowerSchool's operations, making decisions regarding management and security including cybersecurity policies and practices. Bain also had control over AI development and integration as discussed above, was directly involved in developing, deploying, and integrating the generative AI platform to PowerSchool's systems and software which in turn led to additional vulnerabilities and inadequate safeguards. By prioritizing convenience of AI technology over security, both Bain and PowerSchool's rapid deployment of AI into the platform while failing to implement the robust cybersecurity measures contributed to the Data Breach.

42. Bain thus had a duty to supervise PowerSchool's and their own cybersecurity practices and data collection, yet it failed to do so adequately. Both Defendants share responsibility for the breach because they ignored the vulnerabilities of their systems, failed to take corrective actions, and instead, delayed notifying the affected victims of the Data Breach, causing them further harm. After the Data Breach was known, both Bain and PowerSchool could have sent an announcement to the affected victims through their own software, and failed to do so.

43. As Bain owned PowerSchool, it also held Plaintiffs' and the Class Members' Private Information that was provided to PowerSchool. Thus, Bain had an independent duty to Plaintiffs' and the Class Members to maintain the security and privacy of their Private Information when it obtained it by acquiring PowerSchool in October 2024.

44. Failure to secure millions of minors' highly sensitive information was profit driven, prioritizing costs over security: failure to adequately invest in cybersecurity, increased Defendants'

[13] Lawrence Abrams, *PowerSchool hack exposes student, teacher data from K-12 districts,* BLEEPINGCOMPUTER (Jan 7, 2025), https://www.bleepingcomputer.com/news/security/powerschool-hack-exposes-student-teacher-data-from-k-12-districts/.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

return on investment, to provide a boost to the Defendants' profit margin.

## I. The Data Breach

45. At all material times, Defendants failed to maintain proper security measures for their jointly owned PowerSchool SIS software despite their promises of safety and security to consumers.

46. On December 28, 2024, PowerSchool and Bain became aware of the breach, after PowerSchool SIS customer information was stolen through their PowerSource customer support platform.[14]

47. An investigation into the Data Breach determined that the threat actor gained unauthorized access to one of PowerSchool's community-focused customer support portals, PowerSource, using compromised credentials. The threat actor accessed the data using the "export data manager" customer support tool, a tool that allows PowerSchool engineers to access Customer SIS instances for ongoing support and to troubleshoot performance issues.[15] After gaining access to the data, the threat actor exported the PowerSchool SIS "Students" and "Teacher" database tables to a CSV file, which was then stolen.[16]

48. The Defendants have confirmed that the stolen data contains contact details such as names and addresses, and for some districts, it could also include Social Security numbers (SSNs), other personally identifiable information (PII), medical information, and grades.[17]

## II. Data Breaches and the Market for PII

49. It should be no surprise that in today's digital economy the "world's most valuable resource is no longer oil, but data."[18] As such, personal information is a valuable property right.[19] Its value is axiomatic, considering the value of "big data" in corporate America and the

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *The world's most valuable resource is no longer oil, but data*, The Economist (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longeroil-but-data.
[19] *See*, *e.g.*, John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates beyond doubt that personal information has considerable market value.

50. In a consumer-driven world, the ability to capture and use consumer data to shape products, solutions, and the buying experience is critically important to a business's success. Research shows that organizations who "leverage customer behavior insights outperform peers by 85 percent in sales growth and more than 25 percent in gross margin."[20]

51. Indeed, an entire economy exists related to the value of personal data. In 2022, the big data technology market was valued at roughly $309 billion, and that value is expected to grow to $842 billion by 2023.[21]

52. In 2013, the Organization for Economic Cooperation and Development ("OECD") even published a paper entitled "Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value."[22] In this paper, the OECD measured prices demanded by companies concerning user data derived from "various online data warehouses."[23] OECD indicated that "[a]t the time of writing, the following elements of personal data were available for various prices: USD 0.50 cents for an address, USD 2 [i.e. $2] for a date of birth, USD 8 for a social security number (government ID number), USD 3 for a driver's license number and USD 35 for a military record. A combination of address, date of birth, social security number, credit record and military [record] is estimated to cost USD 55."[24]

53. The U.S. Department of Justice's Bureau of Justice Statistics has found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more

---

[20] Brad Brown, Kumar Kanagasabai, Prashant Pant & Goncalo Serpa Pinto, *Capturing value from your customer data*, McKinsey (Mar. 15, 2017), https://www.mckinsey.com/business-functions/quantumblack/our-insights/capturing-value-from-your-customer-data.

[21] Big Data Technology Market Research Report, Fortune Business Insights (Sept. 2023), https://www.fortunebusinessinsights.com/industry-reports/big-data-technology-market-100144

[22] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD Digital Economy Papers, NO. 220 (Apr. 2, 2013), https://www.oecdilibrary.org/docserver/5k486qtxldmq-en.pdf.

[23] *Id.* at 25.

[24] *Id.*

resolving problems" and that resolution of those problems could take more than a year.[25]

54. The U.S. Government Accountability Office (GAO) has concluded that it is common for data thieves to hold onto stolen data for extended periods of time before utilizing it for identity theft.[26] In the same report, the GAO noted that while credit monitoring services can assist with detecting fraud, those services do not stop it.[27]

55. PII is a valuable commodity for which a black market exists on the dark web, among other places. Personal data can be worth from $1,000-$1,200 on the dark web[28] [29] and the legitimate data brokerage industry is valued at more than $250 billion.

56. When entities entrusted with personal data fail to implement industry best practices, cyberattacks and other data exploitations can go undetected for a long period of time. This worsens the ramifications and can even render the harm irreparable.

57. When a victim's data is compromised in a breach, the victim is exposed to serious ramifications regardless of the sensitivity of the data—including but not limited to identity theft, fraud, decline in credit, inability to access healthcare, as well as legal consequences.[30]

58. PII has a distinct, high value—which is why legitimate companies and criminals seek to obtain and sell it.

59. Indeed, an entire economy exists related to the value of personal data. In 2022, the big

---

[25] U.S. Department of Justice, Bureau of Justice Statistics, Victims of Identity Theft, 2014 (Sept. 2015), http://www.bjs.gov/content/pub/pdf/vit14.pdf (last accessed December 5, 2024).
[26] U.S. Government Accountability Office Report to Congressional Requesters, Data Breaches – Range of Consumer Risks Highlights Limitations of Identity Theft Services, https://www.gao.gov/assets/700/697985.pdf (last accessed December 5, 2024).
[27] *Id.*
[28] Ryan Smith, *Revealed-how much is personal data worth on the dark web?*, INSURANCE BUSINESS MAGAZINE, https://www.insurancebusinessmag.com/ca/news/cyber/revealed--how-much-is-personal-data-worth-on-the-dark-web-444455.aspx (last accessed December 5, 2024).
[29] Maria LaMagna, *The sad truth about how much your Google data is worth on the dark web*, MARKETWATCH (last accessed May 21, 2024). 17 Emily Wilson, The Worrying Trend of Children's Data Being Sold on the Dark Web, TNW (February 23, 2019), https://thenextweb.com/contributors/2019/02/23/children-data-sold-the-dark- web/ (last accessed December 5, 2024).
[30] Identity Theft Resource Center, 2017 Annual Data Breach Year-End Review, https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_ V2_combinedWEB.pdf (last accessed December 5, 2024).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

data technology market was valued at roughly $309 billion, and that value is expected to grow to $842 billion by 2023.[31]

60. The Defendants knew or should have known that Plaintiffs' and Class Members' Private Information is valuable, both to legitimate entities, like Defendant, and to cybercriminals.

61. The Defendants knew or should have known that the Plaintiffs and Class Members would reasonably rely upon and trust Defendants' promises regarding security and safety of their data and systems, and that their valuable Private Information would be protected.

62. By collecting, using, selling, monitoring, and trafficking Plaintiffs' and other consumers' Private Information, and failing to protect it by maintaining inadequate security systems, failing to properly archive the Private Information, allowing access of third parties, and failing to implement security measures, the Defendants caused harm to the Plaintiffs and other PowerSchool customers.

## III. The Sensitivity of Plaintiffs' and Class Members' Private Information Demands Heightened Protection

63. Countless victims impacted by the Data Breach now face a constant threat of being repeatedly harmed, including but not limited to living the rest of their lives knowing that criminals can compile, build and amass and build profiles on them for decades – exposing them to a continuing threat of identity theft, disclosure of PII, threats, extortion, harassment and phishing scams, and the attendant anxiety from not knowing how your information will be used when it comes into nefarious individuals' hands.

64. Data breaches of this caliber can result in the exposure of extremely sensitive information about adults and children's medical histories, addresses, Social Security Numbers, and student's academic performance and grades. The FBI has warned that "widespread collection of student data could have privacy and safety implications if compromised or exploited."[32] Defendants

[31] Big Data Technology Market Research Report, Fortune Business Insights (Sept. 2023), https://www.fortunebusinessinsights.com/industry-reports/big-data-technology-market-100144

[32] Education Technologies: *Data Collection and Unsecured Systems Could Pose Risks to Children*, FBI Alert No. I-091318-PSA (Sept. 13, 2018), https://www.ic3.gov/media/2018/180913.aspx (last accessed December 5, 2024).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

manage information for school districts, including students, and their failure to safeguard Private Information puts children at risk.

65. Due to the special risks associated with individuals' data breaches and the increasing frequency with which they are occurring, it is imperative for entities like the Defendants to routinely: (a) monitor for system breaches, cyberattacks and other exploitations; (b) update their software, security procedures, and firewalls; and (c) make sure its employees are adequately trained to recognize and thwart social engineering attacks, such as phishing.

## IV. Defendants' Duty to Safeguard Private Information

66. Defendant PowerSchool is one of the largest digital warehouse providers in North America and contracts with thousands of school districts to securely store students' and staff members' data on its cloud-based storage servers. Likewise, Defendant Bain is "one of the world's leading private investment firms" that has been in business since 1984 and has over $185 Billion under management.[33] As such, each Defendant is responsible for developing and maintaining environments which collects and processes personal data for millions of Americans.

67. Defendant Bain owns PowerSchool, having acquired it on or about October 1, 2024, prior to the Data Breach at issue here.

68. The Defendants collect, receive, and store extensive individually identifiable information. Depending on the clientele, these records include ***names, addresses, social security numbers, medical information, and students' academic information including grades.*** All data PowerSchool's clients seek to utilize in their day-to-day business operations is placed and managed on PowerSchool's cloud servers.

69. The Defendants included privacy policies and commitments to maintain the confidentiality of data stored in their digital warehouses as terms of contracts with their clients. Through contract terms and representations to their clients and the public, the Defendants promised to take specific measures to protect Personal Information, as school districts, to ensure the privacy of their students and teachers, as well as to comply with federal and state privacy laws, sought to

[33] Bain Capital, *About us*, available at https://www.baincapital.com/about-us (last accessed January 16, 2025).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

provide their teachers and students with services utilizing their data, and as such, these customers were intended third-party beneficiaries of Defendants' contracts. [34]

70. As such, the Defendants have failed to secure the PII of the individuals that provided their sensitive information to school districts and all other clients herein. The Defendants failed to take appropriate steps to protect the PII of the Plaintiffs and other Class Members from being disclosed.

71. The Defendants were prohibited by the Federal Trade Commission Act (the "**FTC Act**") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "**FTC**") has concluded that an entity's failure to maintain reasonable and appropriate data security for individuals' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015).

72. The FTC has brought enforcement actions against entities engaged in commerce for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

73. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all decision-making.[35]

74. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide

---

[34] For example, the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g; 34 CFR Part 99, is a federal law that protects the privacy of student education records and applies to schools and other educational institutions that receive federal funds.

[35] Federal Trade Commission, *Start With Security*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed January 13, 2025).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

for Business, which established cybersecurity guidelines for businesses.[36] The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

75. The FTC further recommends that entities not maintain PII longer than needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[37]

76. Furthermore, the FTC requires that entities like the Defendants conduct risk assessments, implement and periodically review access control, encrypt customer information, implement multi-factor authentication for anyone accessing customer information within their systems, dispose of customer information securely, maintain a log of authorized users' activity and keep an eye out of unauthorized access, train employees regarding security awareness, conduct audits, penetration testing, and system wide scans regularly to test for publicly known security vulnerabilities – all of which if had been properly implemented would have allowed the Defendants to prevent this Data Breach.

77. The Defendants failed to properly implement basic data security practices, allowing for this data breach to occur, victimizing millions of people – by failing to adhere to many of the FTC protocols and allowing access to a hacker impersonating an employee. Each of the Defendants should have a multifaceted security protocol in place, including a program that adequately trains employees on recognizing and thwarting phishing and social engineering attacks, monitoring out-of-network emails, segmenting the network, flagging suspicious domain addresses or content,

---

[36] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136-protecting-personal-information.pdf (last accessed January 13, 2025).

[37] Federal Trade Commission, *Start with Security*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed January 13, 2025).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

utilized multifactor authentication before allowing access to highly sensitive information, mandating strict compliance with these protocols; mandating regular archiving of email data/removal of sensitive data from emails to servers; avoiding exchanging any sensitive data for patients/members over the emails, simulating social engineering attempts to ensure compliance, increasing spam filtering via email gateways, implementing strict policies regarding exchange of PII over emails, implementing and enforcing appropriate credential/key procedures including finger print recognition/physical key authentication; monitoring systems 24/7 for any suspicious activity, encrypting data over the email exchanges. Had Defendants maintained these and other proper protocols and regularly conducted audits to ensure their vulnerabilities and training, they would likely have prevented this Data Breach.

78. The Plaintiffs and Class Members provided Private Information to the Defendants with the reasonable expectation and mutual understanding that the Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

79. The Defendants' failure to provide adequate security measures to safeguard Private Information is especially egregious because it operates in a field which has recently been a frequent target of scammers attempting to gain access to confidential PII.

## V. Impact of the Data Breach on Consumers

80. The Plaintiffs and the Class have suffered actual harm as a result of Defendants' conduct. The Defendants failed to institute adequate security measures that led to a data breach. This breach allowed hackers to access the Private Information, including ***names, addresses, Social Security numbers, medical information and student academic information, including grades*** of the Plaintiffs and the Class. Now that the Private Information has been accessed and absconded with, it is available for criminal elements to sell or trade and will continue to be at risk for the indefinite future. In fact, the U.S. Government Accountability Office found that, "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[38]

81. The Plaintiffs and Class Members are now vulnerable to a full gamut of cybercrimes,

[38] *See* U.S. GOV'T ACCOUNTABILITY OFF. REPORT TO CONGRESSIONAL REQUESTERS 29 2007. https://www.gao.gov/new.items/d07737.pdf. (Last visited December 19, 2023).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

loss in value of their property, and have been forced to take remedial action, as listed below:

**Digital Phishing Scams**

82. Phishing scammers use emails and text messages to trick people into giving them their personal information, including but not limited to passwords, account numbers, and social security numbers. Phishing scams are frequently successful, and the FBI reported that people lost approximately $57 million to such scams in 2019 alone.[39]

83. The Defendants knew or should have known of the dangers of digital phishing scams. When Personal Information is employed in a social engineering scheme, criminals can gain unfettered access to individuals, or corporate databases, as the Data Breach itself evinces.

84. The Plaintiffs and the Class Members are now more likely to become victims of digital phishing attacks because of the compromised information.

**SIM-Swap**

85. The data leak can also lead to SIM-swap attacks against the Class. A SIM-swap attack occurs when the scammers trick a telephone carrier to port the victim's phone number to the scammer's SIM card. By doing so, the attacker is able to bypass two-factor authentication accounts, as are used to access cryptocurrency wallets and other important accounts. The type of personal information that has been leaked poses a profound tangible risk of SIM-swap attacks for the Class.

86. The Plaintiffs and the Class Members are now more likely to become victims of SIM Swap attacks because of the released personal information.

**Loss of Time**

87. As a result of this breach, the Plaintiffs and impacted Class Members will suffer unauthorized email solicitations and experience a significant increase in suspicious phishing scam activity via email, phone calls, text messages, all following the breach. In addition, Plaintiff Flick, as a result of the breach, has spent significant time and effort researching the breach, monitoring their accounts for fraudulent activity, and changing passwords and other log-in credentials, as well

[39] *See How to Recognize and Avoid Phishing Scams*, FTC Consumer Advice, https://consumer.ftc.gov/articles/how-recognize-and-avoid-phishing-scams (Last visited December 19, 2023).

as engaging in research to ensure that her son, M.C., does not suffer identity theft.

**Threat of Identity Theft**

88. As a direct and proximate result of the Defendants' breach of confidence, and failure to protect Private Information, the Plaintiffs and the Class have also been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuse of this Private Information, resulting in ongoing monetary loss and economic harm, loss of value of privacy and confidentiality of the stolen Private Information, illegal sales of the compromised Private Information on the black market, mitigation expenses and time spent on credit monitoring, identity theft insurance, credit freezes/unfreezes, expenses and time spent in initiating fraud alerts, contacting third parties; decreased credit scores, lost work time, and other injuries. Each Defendant, through its own misconduct, has enabled numerous bad actors to sell and profit off of Private Information that belongs to the Plaintiffs.

**Out of Pocket Costs**

89. Plaintiff Flick is now forced to research and subsequently acquire credit monitoring and reasonable identity theft defensive services and maintain these services to avoid further impact. Plaintiff Flick anticipates spending out of pocket expenses to pay for these services. Plaintiff Flick's son, M.C., has also had his personal information lost and could be the victim of identity theft now or at any point in the future due to the breach, with additional out-of-pocket costs to follow.

**Diminution in Value of a Valuable Property Right**

90. Because personal data is valuable personal property, market exchanges now exist where internet users like Plaintiffs' and Class Members can sell or monetize their own personal data.

91. In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to legitimate marketers or app developers.[40] For example, consumers who agree to provide their

[40] *See*, *e.g.*, *The Personal Data Revolution*, DATACOUP, https://datacoup.com/



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[41]

92. Accordingly, as a result of the Data Breach, the Plaintiffs lost the sale value of their Private Information and the opportunity to control how it is used. That a threat actor specifically targeted the Defendants demonstrates just how valuable the Plaintiffs' and Class Members' Private Information can be to hackers and the significant value of the Plaintiffs' and Class Members' Private Information to cybercriminals.

**<u>Summary of Actual Economic and Noneconomic Damages</u>**

93. In sum, the Plaintiffs and similarly situated individuals were injured as follows:

i. Theft of their Private Information and the resulting loss of privacy rights in that information;

ii. Improper disclosure of their Private Information;

iii. Loss of value of their Private Information;

iv. The amount of ongoing reasonable identity defense and credit monitoring services made necessary as mitigation measures;

v. Defendants' retention of profits attributable to Plaintiffs' and other individuals Private Information that the Defendants failed to adequately protect;

vi. Economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which the Plaintiffs are now exposed;

vii. Ascertainable out-of-pocket expenses and the value of the Plaintiffs' and Class Members' time allocated to fixing or mitigating the effects of this data breach;

viii. Emotional distress, and fear associated with the imminent threat of harm from the continued phishing scams and attacks as a result of this data breach.

## VI. <u>Defendants Should Have Invested in Appropriate & Necessary Data Security</u>

94. In the years immediately preceding the Data Breach, the Defendants knew or should have known that their computer systems were a target for cybersecurity attacks.

95. The FBI, FTC, GAO, U.S. Secret Service, United States Cybersecurity and

[41] Nielsen Computer & Mobile Panel, *Frequently Asked Questions*, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Infrastructure Security Agency, State Attorney General Offices and many other government and law enforcement agencies, and hundreds of private cybersecurity and threat intelligence firms, have issued warnings that put the Defendants on notice, long before the Data Breach, that (1) cybercriminals were targeting companies who store personal information, such as Defendant; (2) cybercriminals were ferociously aggressive in their pursuit of large collections of Private Information like that in possession of Defendant; (3) cybercriminals were selling large volumes of Private Information and corporate information on Dark Web portals; and (4) the threats were increasing.

96. Had the Defendants been diligent and responsible, it would have known about and acted upon warnings published in 2017 that 93% of data security breaches were avoidable and the key avoidable causes for data security incidents are:

- Lack of a complete risk assessment, including internal, third-party, and cloud-based systems and services;
- Not promptly patching known/public vulnerabilities, and not having a way to process vulnerability reports;
- Misconfigured devices/servers;
- Unencrypted data and/or poor encryption key management and safeguarding;
- Use of end-of-life (and thereby unsupported) devices, operating systems, and applications;
- Employee errors and accidental disclosures — lost data, files, drives, devices, computers, improper disposal;
- Failure to block malicious email; and
- Users succumbing to business email compromise (BEC) and social exploits.[42]

97. Considering the information and warnings readily available to the Defendants before the Data Breach, the Defendants had reason to be on guard and to increase data security to avoid an attack.

98. Prior to the Data Breach, the Defendants thus knew or should have known that there was a foreseeable risk that Plaintiffs' and Class Members' Private Information could be accessed, exfiltrated and utilized by nefarious individuals as the result of a cyberattack.

[42] Gretel Egan, *OTA Report Indicates 93% of Security Breaches Are Preventable*, PROOFPOINT (Feb. 7, 2018), available at https://www.proofpoint.com/us/security-awareness/post/ota-report-indicates-93-security-breaches-are-preventable (last accessed May 19, 2023).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

99. Data security experts advise that "the vast majority of data breaches are preventable" if companies follow widely-available advice on data security practices, including "continually audit[ing] and reevaluat[ing]" their data security practices; being aware of and working proactively to counter cybercriminals' evolving techniques and approaches; and training and re-training their employees.[43]

100. The Defendants did not follow this advice. On their own website, PowerSchool claims it is "committed to being a good custodian of student data, taking all reasonable and appropriate countermeasures to ensure data confidentiality, integrity, and availability."[44] Had the Defendants complied, this Data Breach would have been preventable.

## CLASS ALLEGATIONS

101. The Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated. The Class which the Plaintiffs seek to represent comprises:

> All individuals residing in the United States whose Private Information was compromised as a result of the Data Breach.
>
> ("**the Class**")

This definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

102. The California Subclass which Plaintiffs seek to represent comprises:

> All individuals residing in California whose Private Information was compromised as a result of the Data Breach.
>
> (the "**California Subclass**").

This definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

---

[43] Nate Nead, *How To Prevent A Data Breach In Your Company*, FORBES BUSINESS COUNSEL, FORBES (Jul. 30, 2021) available at https://www.forbes.com/sites/forbesbusinesscouncil/2021/07/30/how-to-prevent-a-data-breach-in-your-company/?sh=3828f7b918da (last accessed December 4, 2024).

[44] PowerSchool, Cybersecurity, Data Privacy, & Infrastructure, https://www.powerschool.com/security/ (Last Accessed January 13, 2025).

103. The Class is likely comprised of millions of students and teachers of the Defendants' clients throughout the United States and the state of California (the "Class Members"). The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

104. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the Class was exposed to the same common and uniform false and misleading advertising and omissions. The questions of law and fact common to the Class predominate over questions which may affect individual Class Members. Common questions of law and fact include, but are not limited to, the following:

a. Whether the Defendants' conduct is an unlawful business act or practice within the meaning of Business and Professions Code section 17200, *et seq*.;

b. Whether the Defendants' conduct is an unfair business act or practice within the meaning of Business and Professions Code section 17200, *et seq*.;

c. Whether the Defendants' conduct is in violation of California Civil Code Sections 1709, 1710;

d. Whether the Defendants' failure to implement effective security measures to protect the Plaintiffs' and the Class Members' Private Information was negligent;

e. Whether the Plaintiffs and the Class are third-party beneficiaries to the contracts between the Defendants and their customers;

f. Whether the Defendants represented to the Plaintiffs and the Class that they would protect their Private Information;

g. Whether the Defendants owed a duty to the Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

h. Whether the Defendants breached a duty to the Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

i. Whether Class Members' Private Information was accessed, compromised, or stolen in the Data Breach;



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

j. Whether the Defendants' conduct caused or resulted in damages to the Plaintiffs and the Class;

k. Whether the Defendants failed to notify the public of the breach in a timely and adequate manner;

l. Whether the Defendants knew or should have known that their systems, including but not limited to training protocols and policies, left them vulnerable to a data breach;

m. The current security and privacy practices adopted by the Defendants and how those are implemented;

n. Whether the Defendants adequately addressed the vulnerabilities that allowed for the Data Breach; and

o. Whether, as a result of the Defendants' conduct, the Plaintiffs and the Class are entitled to damages and relief.

105. The Plaintiffs' claims are typical of the claims of the proposed Class, as the Plaintiffs and Class Members were harmed by the Defendants' uniform unlawful conduct.

106. The Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs have retained competent and experienced counsel in class actions and other complex litigation.

107. The Plaintiffs and the Class have suffered injury as a result of the Defendants' false, deceptive, and misleading representations.

108. The Plaintiffs would not have given their Private Information to the Defendants but for the reasonable belief that the Defendants would safeguard their data and Private Information.

109. The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspapers, and magazines.

110. A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

111. The litigation and resolution of the Class's claims are manageable. Individual litigation of the legal and factual issues raised by the Defendants' conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

112. The Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for the Defendants.

113. Absent a class action, the Defendants will likely retain the benefits of their wrongdoing. Because of the small size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, Class Members will continue to suffer losses and the Defendants (and similarly situated companies) will be allowed to continue these violations of law and to retain the proceeds of their ill-gotten gains.

**COUNT ONE**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

**BUSINESS & PROFESSIONS CODE SECTION 17200, *et seq.***

**(ON BEHALF OF THE CALIFORNIA SUBCLASS AND NATIONWIDE CLASS)**

114. The Plaintiffs, individually and on behalf of the Class, herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

115. For all Class members outside of the California Subclass, these claims are brought under the relevant consumer protection statute for the state in which they reside. For each state, the relevant statutes are as follows: Alabama—Deceptive Trade Practices Act (Ala. Code § 8-19-1, *et seq.*); Alaska—Unfair Trade Practices and Consumer Protection Act (Alaska Stat. § 45.50.471, *et seq.*); Arizona—Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*); Arkansas—Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq.*); Colorado—Consumer

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut—Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. § 42-110a, *et seq.*); Delaware—Consumer Fraud Act (Del. Code Ann. tit. 6, § 2511, *et seq.*); District of Columbia—D.C. Code § 28-3901, *et seq.*; Florida—Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.20, *et seq.*); Georgia—Fair Business Practices Act (Ga. Code Ann. § 10-1-390, *et seq.*); Hawaii—Haw. Rev. Stat. § 480-1, *et seq.*); Idaho—Consumer Protection Act (Idaho Code Ann. § 48-601, *et seq.*); Illinois—Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*); Indiana—Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-1, *et seq.*); Iowa—Iowa Code § 7.14.16, *et seq.*); Kansas—Consumer Protection Act (Kan. Stat. Ann. § 50-623, *et seq.*); Kentucky—Consumer Protection Act (Ky. Rev. Stat. Ann. § 367.110, *et seq.*); Louisiana—Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. § 51:1401, *et seq.*); Maine—Unfair Trade Practices Act (Me. Rev. Stat. Ann. tit. 5, § 205A, *et seq.*); Maryland—Maryland Consumer Protection Act (Md. Code Ann., Com. Law § 13-101, *et seq.*); Massachusetts—Regulation of Business Practice and Consumer Protection Act (Mass. Gen. Laws Ann. ch. 93A, §§ 1-11); Minnesota—False Statement in Advertising Act (Minn. Stat. § 8.31, Minn. Stat. § 325F.67), Prevention of Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq.*); Mississippi—Consumer Protection Act (Miss. Code Ann. § 75-24, *et seq.*); Missouri—Merchandising Practices Act (Mo. Rev. Stat. § 407.010, *et seq.*); Montana—Unfair Trade Practices and Consumer Protection Act (Mont. Code. Ann. § 30-14-101, *et seq.*); Nebraska—Consumer Protection Act (Neb. Rev. Stat. § 59-1601); Nevada—Trade Regulation and Practices Act (Nev. Rev. Stat. § 598.0903, *et seq.*, Nev Rev. Stat. § 41.600); New Hampshire—Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*); New Jersey—N.J. Stat. Ann. § 56:8-1, *et seq.*); New Mexico—Unfair Practices Act (N.M. Stat. § 57-12-1, *et seq.*); New York—N.Y. Gen. Bus. Law §§ 349, 350, N.Y. Exec. Law § 63(12); North Carolina—N.C. Gen. Stat. § 75-1.1, *et seq.*); North Dakota—N.D. Cent. Code § 51-15-01, *et seq.*); Ohio—Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.01, *et seq.*); Oklahoma—Consumer Protection Act (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon—Unlawful Trade Practices Law (Or. Rev. Stat. § 646.605, *et seq.*); Pennsylvania—Unfair Trade Practices and Consumer Protection Law (73 Pa. Stat. Ann. § 201-1, *et seq.*); Rhode Island—Unfair Trade Practice and Consumer Protection Act (R.I.

Gen. Laws § 6-13.1-1, *et seq.*); South Carolina—Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq.*); South Dakota—Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, *et seq.*); Tennessee—Consumer Protection Act (Tenn. Code Ann. § 47-18-101, *et seq.*); Texas—Deceptive Trade Practices—Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*); Utah—Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, *et seq.*); Vermont—Consumer Fraud Act (Vt. Stat. Ann. tit. 9, § 2451, *et seq.*); Virginia—Consumer Protection Act (Va. Code Ann. § 59.1-196, *et seq.*); Washington—Consumer Protection Act (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia—W. Va. Code § 46A-6-101, *et seq.*); Wisconsin—Wis. Stat. § 100.18, 100.20; Wyoming—Consumer Protection Act (Wyo. Stat. Ann. § 40-12-101, *et seq.*).

**A. "Unfair" Prong**

116. Under California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, et seq., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provide to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

117. The Defendants' conduct as alleged herein does not confer any benefit to consumers. Mishandling this data, by failing to train employees responsible for the safeguarding of this data, shows blatant disregard for members' privacy and security.

118. The Defendants' conduct as alleged herein causes injuries to their members, who entrusted the Defendants with their Private Information and whose Private Information was leaked as a result of the Defendants' unlawful conduct.

119. The Defendants' failure to implement and maintain reasonable security measures was also contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure entities that are trusted with it use appropriate security measures. These policies are reflected in law, including the FTC Act, 15 U.S.C. §45, California's Consumer Records Act, Cal. Civ. Code §1798.81.5, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100.

120. Those affected by the breach cannot avoid any of the injuries caused by the Defendants' conduct as alleged herein.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

121. The injuries caused by the Defendants' conduct as alleged herein outweigh any benefits.

122. The Defendants' conduct, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

123. The Defendants could have furthered their legitimate business interests in ways other than their unfair conduct.

124. The Defendants' conduct threatens the public by misleadingly advertising their purported "commitment" to protecting Private Information while exposing members' Private Information to hackers. The Defendants' conduct also threatens other entities, large and small, who play by the rules. The Defendants' conduct stifles competition, has a negative impact on the marketplace, and reduces consumer choice.

125. All of the conduct alleged herein occurs and continues to occur in the Defendants' operations. The Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on approximately thousands of occasions daily.

126. Pursuant to Business and Professions Code Sections 17203, the Plaintiffs and the Class seek an order from this Court enjoining the Defendants from continuing to engage, use, or employ their unfair business practices.

**B. "Fraudulent" Prong**

127. The California Business and Professions Code Section 17200, et seq. considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

128. The Defendants' advertising and representations that they adequately protect students' information are likely to deceive members of the public into believing that the Defendants can be entrusted with Private Information, and that Private Information gathered by the Defendants is not in danger of being compromised. Schools, knowing they are required to comply with privacy laws and regulations, would not do business with companies that they believed would fail to adequately protect the information of their students and employees.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

129. The Defendants' representations about their commitments to data security, as alleged in the preceding paragraphs, are false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

130. The Defendants knew or should have known of their fraudulent conduct.

131. As alleged in the preceding paragraphs, the material misrepresentations by the Defendants detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

132. The Defendants could have implemented robust security measures to prevent the Data Breach but failed to do so; specifically, Defendants could have ensured that employees with access to Private Information received adequate training to recognize and thwart social engineering attacks or other security intrusions.

133. The Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

134. Pursuant to Business & Professions Code Section 17203, the Plaintiffs and the Class seek an order of this Court enjoining the Defendants from continuing to engage, use, or employ their practice of false and deceptive representations about the strength or adequacy of their security systems. Likewise, the Plaintiffs and the Class seek an order requiring the Defendants to disclose such misrepresentations.

135. The Plaintiffs and the Class have suffered injury in fact and have lost money as a result of the Defendants' fraudulent conduct.

136. **Injunction**. Pursuant to Business and Professions Code Sections 17203, the Plaintiffs and the Class seek an order from this Court compelling the Defendants to implement adequate safeguards to protect consumer Private Information retained by Defendant. This includes, but is not limited to: improving security systems, deleting data that no longer needs to be retained by Defendant, archiving that data on secure servers, adopting adequate and robust training policies and protocols for all employees entrusted with access to Personal Information and notifying all affected consumers in a timely manner.

**C. "Unlawful" Prong**

137. California Business and Professions Code Section 17200, et seq., identifies violations of any state or federal law as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

138. The Defendants' unlawful conduct, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq.*

139. The Defendants' conduct, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes unlawful conduct.

140. Defendants have engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), the FTC Act, 15 U.S.C. § 45, California's Consumer Privacy Act, Cal. Civ. Code § 1798.100, and California common law.

141. Defendants knew or should have known of their unlawful conduct.

142. As alleged in the preceding paragraphs, the misrepresentations by the Defendants detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code section 17200.

143. Defendants could have furthered their legitimate business interests in ways other than by their unlawful conduct.

144. All of the conduct alleged herein occurs and continues to occur in the Defendants' business. The Defendants' unlawful conduct is part of a pattern or generalized course of conduct repeated on approximately thousands of occasions daily.

145. Pursuant to Business and Professions Code Sections 17203, the Plaintiffs and the Class seek an order from this Court enjoining the Defendants from continuing to engage, use, or employ their unlawful business practices.

146. The Plaintiffs and the Class have suffered injury-in-fact and have lost money or property as a result of the Defendants' unfair conduct. The Plaintiffs and the Class would not have given Defendants, either directly or through their school, their Private Information, had they known



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

that this Private Information was vulnerable to a data breach. Likewise, the Plaintiffs and Class Members seek an order mandating that the Defendants implement adequate security practices to protect individuals' Private Information. Additionally, the Plaintiffs and the members of the Class seek and request an order awarding the Plaintiffs and the Class restitution of the money wrongfully acquired by the Defendants by means of the Defendants' unfair and unlawful practices.

147. No adequate remedy at law. The Plaintiffs and the Class are entitled to equitable relief as no adequate remedy at law exists.

a. The Defendants have not yet implemented adequate protections to prevent a future data breach, nor have they given an adequate notice to all affected class members, and therefore, the equitable relief requested here would prevent ongoing and future harm;

b. Injunctive relief is also necessary to prevent the members of general public from being misled by the Defendants' misrepresentations regarding privacy and security of information;

c. The equitable relief under the UCL (and also under unjust enrichment discussed below) creates a straightforward cause of action for violations of law (such as statutory or regulatory requirements related to representations and omissions made with respect to the Defendants' services). Furthermore, damages for non-UCL claims require additional elements or pre-suit notice letters, which would potentially eliminate the possibility of providing damages to the entire class, while restitution would provide certainty and remedy for all affected victims.

d. In addition, discovery—which has not yet been provided and/or completed—may reveal that the claims providing legal remedies are inadequate. At this time, forcing an election of remedies at the initial pleadings stage, in the absence of completed discovery regarding class certification and merits, is premature and likely to lead to subsequent, potentially belated, and hotly contested motions to amend the pleadings

to add equitable remedies based on a lengthy historical recount of discovery and analysis of voluminous exhibits, transcripts, discovery responses, document productions, etc., as well as related motions to seal confidential information contained therein.

**COUNT TWO**

**DECEIT BY CONCEALMENT, CALIFORNIA CIVIL CODE SECTIONS 1709, 1710**

**(ON BEHALF OF THE CALIFORNIA SUBCLASS)**

148. The Plaintiffs, individually and on behalf of the Class, herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

149. The Defendants knew or should have known that their security systems were inadequate to protect the Plaintiffs' and Class Members' Private Information. Specifically, the Defendants had an obligation to disclose to their consumers that their security systems were not adequate to safeguard their Private Information. The Defendants did not do so. Rather, the Defendants deceived the Plaintiffs and the California Subclass by concealing the vulnerabilities in their security systems.

150. California Civil Code §1710 defines deceit as, (a) "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true"; (b) "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true"; (c) "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact"; or (d) "[a] promise, made without any intention of performing it." The Defendants' conduct as described herein therefore constitutes deceit of the Plaintiffs and the California Subclass.

151. California Civil Code §1709 mandates that in willfully deceiving the Plaintiffs and the California Subclass with intent to induce or alter their position to their injury or risk, the Defendants are liable for any damages which Plaintiffs and the California Subclass thereby suffer.

152. As described above, the Plaintiffs and the California Subclass have suffered significant harm as a direct and proximate result of the Defendants' deceit and other unlawful conduct. Had the Defendants been truthful about their security vulnerabilities, the Plaintiffs and the



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Class would have avoided some, if not all, of the harm attributable to the Data Breach.

**COUNT THREE**

**CALIFORNIA CONSUMER PRIVACY ACT, CALIFORNIA CIVIL CODE § 1798.100**

**(ON BEHALF OF THE CALIFORNIA SUBCLASS)**

153. The Plaintiffs, individually and on behalf of the Class, herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

154. The Plaintiffs and Subclass Members are "consumer[s]" as that term is defined in Cal. Civ. Code. § 1798.140(g), because they are natural persons and California residents.

155. On August 9, 2024, roughly 2 months before being acquired by Bain Capital, PowerSchool published Second Quarter Financial Results and reported them to the U.S. Securities and Exchange Commission, in which it noted that revenue from the Second Quarter of 2024 was approximately $191,600,000 and that it "supports over 60 million students globally and more than 18,000 customers, including over 90 of the 100 largest districts by student enrollment in the United States."[45]

156. PowerSchool and Bain are both considered a "business" as that term is defined in Cal. Civ. Code. § 1798.140(c) because they each have annual gross revenues exceeding $25 million; they buy, receive, sell, and share personal information of 50,000 or more consumers, households, or devices (here specifically they received, and shared personal information of millions of consumers as discussed above).

157. The Plaintiffs' and Class Members' PII is "nonencrypted and nonredacted personal information" consisting of social security number, names, addresses and other sensitive personal information. Cal. Civ. Code § 1798.150(a)(1). The Data Breach constitutes "an unauthorized access and exfiltration, theft, or disclosure" pursuant to Cal. Civ. Code § 1798.150(a)(1) because due to Defendants' failure to implement reasonable and necessary security measures, they enabled third party criminals to access personal information and thus, caused unauthorized sharing of Plaintiffs'

---

[45] *PowerSchool Announces Second Quarter Financial Results*, PowerSchool Earnings Report https://www.sec.gov/Archives/edgar/data/1835681/000183568124000099/exhibit991-q224earningsrel.htm (August 9, 2024).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

and the Class Members' personal information.

158. The Defendants had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the Plaintiffs' and Class Members' PII to protect said PII.

159. The Defendants breached the duty they owed to the Plaintiffs and Class Members described above. The Defendants breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of the Plaintiffs and Class Members; (b) detect the breach while it was ongoing; and (c) maintain security systems consistent with industry standards.

160. The Defendants' breach of the duty they owed to the Plaintiffs and the Class Members described above was the direct and proximate cause of the Data Breach. As a result, the Plaintiffs and the Class Members suffered damages, as described above and as will be proven at trial.

161. The Plaintiffs and the Class Members seek injunctive relief in the form of an order enjoining the Defendants from continuing the practices that constituted their breach of the duty owed to the Plaintiffs and Class Members as described above.

**COUNT FOUR**

**NEGLIGENCE**

**(ON BEHALF OF THE NATIONWIDE CLASS)**

162. The Plaintiffs, individually and on behalf of the Class, herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

163. The Defendants owed a duty to the Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Private Information. This duty included but was not limited to: (a) designing, implementing, and testing security systems to ensure that consumers' Private Information was consistently and effectively protected; (b) implementing security systems that are compliant with state and federal mandates; (c) implementing security systems that are compliant with industry practices; and (d) promptly detecting and notifying affected parties of a data breach.

164. The Defendants' duties to use reasonable care arose from several sources, including those described below. The Defendants had a common law duty to prevent foreseeable harm to



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

others, including the Plaintiffs and Class Members, who were the foreseeable and probable victims of any inadequate security practices.

165. The Defendants had a special relationship with the Plaintiffs and Class Members, which is recognized by laws and regulations, as well as common law. The Defendants were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to class members from a data breach. The Plaintiffs and Class Members were compelled to entrust the Defendants with their PII. At all relevant times, the Plaintiffs and Class Members understood that the Defendants would take adequate security precautions to safeguard that information. Only the Defendants had the ability to protect the Plaintiffs' and Class Members' PII stored on their servers.

166. The Defendants knew or should have known that the Plaintiffs' and the Class Members' Private Information is information that is frequently sought after by criminals.

167. The Defendants knew or should have known that the Plaintiffs and the Class Members would suffer harm if their Private Information was leaked.

168. The Defendants knew or should have known that their security systems were not adequate to protect Plaintiffs' and the Class Members' Private Information from a data breach.

169. The Defendants' conduct as described above constituted an unlawful breach of their duty to exercise due care in collecting, storing, and safeguarding Plaintiffs' and the Class Members' Private Information by failing to design, implement, and maintain adequate security measures to protect this information. Moreover, the Defendants did not implement, design, or maintain adequate measures to detect a data breach when it occurred.

170. The Defendants' conduct, as described above, constituted an unlawful breach of their duty to provide adequate and prompt notice of the data breach.

171. The Plaintiffs' and the Class Members' Private Information would have remained private and secure had it not been for the Defendants' wrongful and negligent breach of duties. The leak of the Plaintiffs' and the Class Members' Private Information, and all subsequent damages, was a direct and proximate result of the Defendants' negligence.

172. The Defendants' negligence was, at least, a substantial factor in causing the Plaintiffs'

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

and the Class's Private Information to be improperly accessed, disclosed, and otherwise compromised, and in causing Class Members' other injuries arising out of the Data Breach.

173. The damage suffered by the Plaintiffs and the Class Members was the direct and reasonably foreseeable result of the Defendants' negligent breach of their duties to adequately design, implement, and maintain security systems to protect Plaintiffs' and Class Members' Private Information. The Defendants knew or should have known that their security for safeguarding the Plaintiffs' and Class Members' Private Information was inadequate and vulnerable to a data breach.

174. The Defendants' negligence directly caused significant harm to the Plaintiffs and the Class.

**COUNT FIVE**

**INVASION OF PRIVACY**

**(ON BEHALF OF THE NATIONWIDE CLASS)**

171. The Plaintiffs, individually and on behalf of the Class, herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

172. The Plaintiffs' and Class Members had a reasonable and legitimate expectation of privacy in their Private Information that the Defendants failed to adequately protect against compromise from unauthorized third parties.

173. The Defendants owed a duty to the Plaintiffs' and Class Members to keep their Private Information confidential.

174. The Defendants failed to protect, and released to unknown and unauthorized third parties, the Private Information of the Plaintiffs and Class Members.

175. By failing to keep the Plaintiffs' and Class Members' Private Information safe, knowingly utilizing unsecure systems and practices, the Defendants unlawfully invaded the Plaintiffs' and Class Members' privacy by, among others, (i) intruding into the Plaintiffs' and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) failing to adequately secure their Private Information from disclosure to unauthorized persons and/or third parties; and (iii) enabling the disclosure of the Plaintiffs' and Class Members' Private Information without consent.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

176. The Defendants knew or acted with reckless disregard of the fact that a reasonable person in the Plaintiffs' and Class Members' position would consider their actions highly offensive.

177. The Defendants knew or acted with reckless disregard of the fact that organizations handling PII are highly vulnerable to cyberattacks and that employing inadequate security and training practices would render them especially vulnerable to data breaches.

178. As a proximate result of such unauthorized disclosures, the Plaintiffs' and Class Members' reasonable expectations of privacy in their Private Information were unduly frustrated and thwarted, thereby causing Plaintiffs and the Class Members' undue harm.

179. The Plaintiffs seek injunctive relief on behalf of the Class, restitution, as well as any and all other relief that may be available at law or equity. Unless and until enjoined, and restrained by order of this court, the Defendants' wrongful conduct will continue to cause irreparable injury to the Plaintiffs and Class Members. The Plaintiffs' and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the class.

**COUNT SIX**

**UNJUST ENRICHMENT**

**(ON BEHALF OF THE NATIONWIDE CLASS)**

180. The Plaintiffs, individually and on behalf of the Class, herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

181. The Plaintiffs and Class Members conferred a monetary benefit upon the Defendants in the form of monies that the school district paid on behalf of the Plaintiffs and the Class for Defendants' services—namely, they provided and entrusted the Defendants with their valuable Private Information when they provided it to their school or educational institution. Each school in turn is funded through tax revenues and government funds, which it uses on behalf of students. The Defendants were then paid by each school or educational institution to store, maintain, and properly secure the Plaintiffs' and Class Members' Private Information. The Defendants fund their data security measures entirely from payments made on behalf of the Plaintiffs and the Class Members who are the intended beneficiaries of a contract between the Defendants and their clients, the schools

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

or educational institutions. Accordingly, a portion of such payments made on behalf of the Plaintiffs and Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is to be allocated to data security is known to each Defendant.

171. The Plaintiffs and the Class conferred a monetary benefit on the Defendants by providing their PII to their school, which they provided to the Defendants along with payment for their services, via their school or educational institution. In exchange, the Plaintiffs and Class Members should have received from the Defendants the services that were subject to the transaction and have their Private Information protected with adequate data security measures.

172. The Defendants knew that the Plaintiffs and the Class conferred a benefit which they accepted, and through which the Defendants were unjustly enriched. The Defendants profited from these transactions and used the Plaintiffs' and Class Members' Private Information for business purposes to increase their revenues.

173. The Defendants enriched themselves by saving the costs they reasonably should have spent on the necessary data security measures to secure the Plaintiffs' and the Class Members' Private Information. Instead of providing the necessary level of security that would have prevented the Data Breach, the Defendants instead calculated to increase their own profits at the expense of the Plaintiffs and the Class, by using ineffective security measures, failing to pay money for the much-needed training of their employees, failing to conduct the audits, implementing other security measures discussed above. The Plaintiffs and the Class suffered an injury as a direct and proximate result of the Defendants' decision to prioritize their own profits over the requisite security and training.

174. Under the principles of equity and good conscience, the Defendants should not be permitted to retain the money belonging to the Plaintiffs and the Class, because they failed to implement appropriate data management and security measures as mandated by common law and statutory duties.

175. The Plaintiffs and the Class have no adequate remedy at law as discussed above.

176. The Defendants should be compelled to disgorge their profits and/or proceeds that they unjustly received as a result of having the Plaintiffs' and Class Members' PII, or alternatively,

the Defendants should be compelled to refund the amounts that were paid on behalf of the Plaintiffs and the Class for the Defendants' services.

**COUNT SEVEN**

**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**

**(ON BEHALF OF THE NATIONWIDE CLASS)**

177. The Plaintiffs, individually and on behalf of the Class, herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

178. Defendants entered into a contract with each educational institution to provide cybersecurity oversight and maintenance of the institution's data environments. These contracts were made expressly for the benefit of the Plaintiffs and Class Members, who gave their PII to their educational institution as well as the Defendants. In order to effectuate offered services (i.e., establishing secure data systems), Defendants agreed to protect the Plaintiffs' and Class Members' PII.

179. In fact, Defendants advertised PowerSchool as being a secure place to store and keep student data, claiming to their customers that "[w]e are dedicated to protecting your students' data with a comprehensive security program that starts with 'secure by design' principles at the inception of our products and extends through third-party penetration testing, robust cloud security, and a fully staffed 24x7x365 Security Operations Center."[46]

180. Thus, the benefit of collection, protection, and storage of the PII was the direct, intended, and primary objective of the contracting parties as it related to those express terms.

181. The Defendants breached their contract with each educational institution when they failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of the Plaintiffs' and Class Members' PII.

182. The Defendants knew that if they breached their contract, the harm would befall the educational institution's stakeholders for whom the benefit was intended to confer, including the Plaintiffs and the Class Members. As such, the Defendants' failure to uphold the terms of their

[46] *How PowerSchool Protects Data*, POWERSCHOOL, https://www.powerschool.com/student-information-cloud/powerschool-sis/ (last accessed January 16, 2024).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

contract and allow for the Data Breach has foreseeably harmed the Plaintiffs and the Class Members.

183. Accordingly, the Plaintiffs and Class Members are entitled to damages in an amount to be determined at trial, along with their costs, including attorneys' fees incurred.

**COUNT EIGHT**

**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

**(ON BEHALF OF THE NATIONWIDE CLASS)**

184. The Plaintiffs, individually and on behalf of the Class, herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

185. The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., authorizes this Court to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.

186. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

187. The Defendants owe duties of care to the Plaintiffs and Class Members which require them to adequately secure their PII when they chose to accept and store their PII.

188. The Defendants still possess the Plaintiffs' and Class members' PII.

189. The Defendants do not specify in their Data Breach notification letters what specific and verifiable steps they have taken to prevent a similar breach from occurring again.

190. The Plaintiffs and Class Members are at risk of harm due to the exposure of their PII and the Defendants' failures to address the security failings that lead to such exposure.

191. An actual controversy has arisen in the wake of the Data Breach regarding the Defendants' present and prospective common law and other duties to reasonably safeguard the Plaintiffs' and Class Members' PII and whether the Defendants are currently maintaining data security measures adequate to protect the Plaintiffs and the Class from further data breaches that compromise their PII.

192. The Plaintiffs and the Class, therefore, seek a declaration that (1) each of the Defendants' existing security measures do not comply with their obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

protect consumers' Private Information, and (2) to comply with their duties of care, the Defendants must implement and maintain reasonable security measures, including, but not limited to:

a. Prohibiting the Defendants from engaging in the wrongful acts stated herein (including the Defendants' utter failure to provide notice to all affected consumers);

b. Requiring the Defendants to implement adequate security protocols and practices to protect consumers' Private Information consistent with the industry standards, applicable regulations, and federal, state, and/or local laws;

c. Mandating the proper notice be sent to all affected consumers, and posted publicly;

d. Requiring the Defendants to protect all data collected through any account creation requirements;

e. Requiring the Defendants to delete, destroy, and purge the Private Information of the Plaintiffs and Class Members unless the Defendants can provide reasonable justification for the retention and use of such information when weighed against the privacy interests of the Plaintiffs and Class Members;

f. Requiring the Defendants to implement and maintain a comprehensive security program designed to protect the confidentiality and integrity of the Plaintiffs' and Class Members' Private Information;

g. Requiring the Defendants to engage independent third-party security auditors and conduct internal security audits and testing, including simulated attacks, penetration tests, and audits on the Defendants' systems on a periodic basis;

h. Requiring the Defendants to engage independent third-party security auditors and/or internal personnel to run automated security monitoring;

i. Requiring the Defendants to create the appropriate firewalls, and implement the necessary measures to prevent further disclosure and leak of any additional information;

j. Requiring the Defendants to conduct systematic scanning for data breach related issues;

k. Requiring the Defendants to train and test their employees regarding data breach protocols, archiving protocols, and conduct any necessary employee background checks to ensure that only individuals with the appropriate training and access may be allowed to access the Private Information data; and

l. Requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted.

193. The Court can, and should, issue corresponding prospective injunctive relief requiring the Defendants to employ adequate security protocols consistent with the law and industry standards to protect the Plaintiffs' and Class Members' PII.

194. If an injunction is not issued, the Plaintiffs and the Class will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of the Defendants' systems or networks. The risk of another breach is real, immediate, and substantial.

195. The hardship to the Plaintiffs and the Class if an injunction does not issue exceeds the hardship to the Defendants if an injunction is issued. If another data breach occurs, the Plaintiffs and the Class will likely be subjected to fraud, identity theft, and other harms described herein. However, the cost to the Defendants of complying with an injunction by employing reasonable prospective data security measures is minimal given they have preexisting legal obligations to employ these measures.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment and relief on all causes of action as follows:

A. That the Court determines that this Action may be maintained as a Class Action, that the Plaintiffs be named as Class Representatives of the Class, that the undersigned be named as Class Counsel of the Class, and that notice of this Action be given to Class Members;

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

B. That the Court enter an order declaring that the Defendants' actions, as set forth in this Complaint, violate the laws set forth above;

C. An order:

a. Prohibiting the Defendants from engaging in the wrongful acts stated herein (including the Defendants' utter failure to provide notice to all affected consumers);

b. Requiring the Defendants to implement adequate security protocols and practices to protect consumers' Private Information consistent with the industry standards, applicable regulations, and federal, state, and/or local laws;

c. Mandating the proper notice be sent to all affected consumers, and posted publicly;

d. Requiring the Defendants to protect all data collected through any account creation requirements;

e. Requiring the Defendants to delete, destroy, and purge the Private Information of the Plaintiffs and Class Members unless the Defendants can provide reasonable justification for the retention and use of such information when weighed against the privacy interests of the Plaintiffs and Class Members;

f. Requiring the Defendants to implement and maintain a comprehensive security program designed to protect the confidentiality and integrity of the Plaintiffs' and Class Members' Private Information;

g. Requiring the Defendants to engage independent third-party security auditors and conduct internal security audits and testing, including simulated attacks, penetration tests, and audits on the Defendants' systems on a periodic basis;

h. Requiring the Defendants to engage independent third-party security auditors and/or internal personnel to run automated security monitoring;

i. Requiring the Defendants to create the appropriate firewalls, and implement the necessary measures to prevent further disclosure and leak of any additional information;

j. Requiring the Defendants to conduct systematic scanning for data breach related issues;

k. Requiring the Defendants to train and test their employees regarding data breach protocols, archiving protocols, and conduct any necessary employee background checks to ensure that only individuals with the appropriate training and access may be allowed to access the Private Information data; and

l. Requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted.

D. That the Court award the Plaintiffs and the Class damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

E. That the Court issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against the Defendants to which the Plaintiffs and the Class are entitled, including but not limited to restitution and an Order requiring the Defendants to cooperate and financially support civil and/or criminal asset recovery efforts;

F. That the Court award the Plaintiffs and the Class pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

G. That the Court award the Plaintiffs and the Class their reasonable attorneys' fees and costs of suit;

H. That the Court award treble and/or punitive damages insofar as they are allowed by applicable laws; and

I. That the Court award any and all other such relief as the Court may deem just and proper under the circumstances.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), the Plaintiffs respectfully demand a trial by jury for all claims.

DATED: January 16, 2025,

**CLARKSON LAW FIRM, P.C.**

*/s/ Yana Hart*
Ryan Clarkson, Esq.
Yana Hart, Esq.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Email: rclarkson@clarksonlawfirm.com
Email: yhart@clarksonlawfirm.com